IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUSAN P. VANDERBURGH,

    Plaintiff,

  v.

GOLDEN EMPIRE MORTGAGE dba GEM CAPITAL FUNDING, EMC MORTGAGE CORPORATION, DOES 1-500,

    Defendants.
                                      /

No. C 09-01361 CW

ORDER GRANTING DEFENDANT EMC'S MOTION TO DISMISS

Plaintiff Susan Vanderburgh charges Defendants Golden Empire Mortgage dba Gem Capital Funding (GEM) and EMC Mortgage Corporation (EMC) with violating federal and California statutory law and California common law in connection with the sale of certain residential mortgage products. On April 3, 2009, Defendant EMC filed a motion to dismiss or, in the alternative, for a more definite statement. On June 10, 2009, Defendant GEM filed a motion to dismiss. On June 12, 2009, Plaintiff filed a motion to extend time for her to file an opposition to Defendant EMC's motion to dismiss. On June 17, 2009, the Court granted Plaintiff's motion to extend time and stated that her opposition to the motions to dismiss filed by GEM and EMC must be contained in a single brief and filed by July 9, 2009. On June 25, 2009, Plaintiff filed an opposition to EMC's motion to dismiss. On July 10, 2009, the Court

issued an order dismissing claims against GEM without prejudice for failure to prosecute. Therefore, this Order addresses only EMC's motion to dismiss. The motion was taken under submission. Having considered all the papers filed by EMC and Plaintiff, the Court grants EMC's motion to dismiss.

## BACKGROUND

The following facts are taken from Plaintiff's complaint and the documents of which the Court has taken judicial notice.[1] Plaintiff identifies EMC only as a corporation doing business in California. Comp. ¶ 10.[2] In December, 2006, Plaintiff provided Defendants[3] with her financial information and told them that she could afford a loan payment of no more than $2,500 per month. Comp. ¶¶ 23-24. In December, 2006, Plaintiff started negotiating to purchase 8157 Fairway Court, Newark, California and asked Defendants if the purchase price of $775,000 would allow for a mortgage of no more than $2,500 per month. Comp. ¶ 26. Defendants notified Plaintiff that it was possible for her to obtain a loan with a 4.00% interest rate and fully amortized payments of no more than $2,500 per month and that they would submit Plaintiff's loan application for underwriting immediately if she was interested. Comp. ¶ 26. Plaintiff applied for this financing and submitted to Defendants her financial documents showing her income, assets and debts. Comp. ¶ 28-29. Around December 28, 2006, "although her

---

[1] The Court grants EMC's motion for judicial notice.

[2] In its opposition, EMC indicates that it is the servicer of Plaintiff's loan.

[3] Throughout her complaint, Plaintiff makes allegations against "Defendants" in general, without specifying whether a particular action was taken by GEM, EMC or one of the Doe Defendants.

income level, as a legal secretary, should have disqualified her, Plaintiff was notified of being pre-qualified for financing in the amount of $775,000 for the purchase price of $775,000, also known as '100% financing.'" Comp. ¶ 34.  Around December 28, 2006, Plaintiff was informed that she had excellent credit scores.  Comp. ¶ 35.  Approximately one week after she submitted her loan application, "Defendants unilaterally and without permission or knowledge of Plaintiff, modified and misrepresented Plaintiff's true income, debt, and asset holdings to qualify her for financing." Comp. ¶ 37.  On January 4, 2007, GEM committed to finance the purchase of the real property.  Comp. ¶ 38.  Around January 7, 2007, Defendants recommended that Plaintiff artificially inflate her assets by being added to family members' bank accounts, in order to have the loan approved.  Comp. ¶ 39.  On January 19, 2007, Plaintiff signed loan papers for what Defendants insisted was a 4.00% interest loan with fully amortized payments of no more than $2,500 per month and no prepayment penalty.  Comp. ¶ 42.  Plaintiff was not given copies of any loan documents she signed or of disclosures or fee estimates from Defendants.  Comp. ¶ 43.  On January 26, 2007, escrow closed and everything was recorded.  Comp. ¶ 48.

In March, 2007, Plaintiff contacted Defendants about discrepancies between payments due and what was quoted in her loan application because the bill showed an interest rate of 7.75% instead of the 4.00% she was promised.  Comp. ¶ 53.  Also, in March, 2007, Plaintiff learned that the real property would not be appraised high enough to cover the negative amortization that had begun to accrue and Plaintiff informed Defendants that she was

3

struggling with payments. Comp. ¶ 55. Defendants told Plaintiff that she could refinance if she paid the prepayment penalty. Comp. ¶ 55. Between March, 2007 and the filing of the complaint on February 10, 2009,[4] Plaintiff had numerous discussion with Defendants about refinancing the loan and "Defendants continued to misrepresent material facts while providing conflicting information and advising Plaintiff to perform acts that later proved to be damaging." Comp. ¶ 56. In May, 2007, Plaintiff informed Defendants that she was struggling with payments and Defendants told her to keep calling about new programs that might become available. Comp. ¶ 61. This scenario happened repeatedly during 2007. Comp. ¶¶ 61-91. Defendants gave Plaintiff various reasons for not being able to refinance the loan, such as: she was current with payments; programs might be developed in the future that would help her, but were not available at present; her income was too low to sustain the monthly loan payments; she had too much income; she had to wait one year to apply officially for a loan modification; and she could not prove hardship. Comp. ¶¶ 89, 91.

In January, 2008, Defendants told Plaintiff that there was no one year waiting period and they were working on her request for a loan modification. Comp. ¶¶ 95-96. In March, 2008, after Plaintiff submitted another loan modification request, Defendants urged Plaintiff to miss a payment purposely. Comp. ¶ 107. In April, 2008, Defendants told Plaintiff that she earned too much money for a loan modification. Comp. ¶ 113. In June, 2008, when Plaintiff was on medical leave, she again applied for a loan

---

[4]Plaintiff filed her complaint in state court on February 10, 2009. On March 27, 2009, EMC removed it to federal court.

4

modification, but Defendants told her she did not qualify because she made too little money on disability income. Comp. ¶ 119. In July, 2008, Plaintiff again requested a loan modification and was rejected because she was late with her regular payments. Comp. ¶ 122.

EMC submits two deeds of trust for the real property, both dated January 19, 2007. The first deed of trust secures a loan in the amount of $620,000 and identifies GEM as the lender, First America Title Company (First American) as the trustee, and Mortgage Electronic Registration systems, Inc. (MERS) as the beneficiary as nominee for the lender. The second deed of trust secures a loan in the amount of $155,000 and identifies the same entities as lender, trustee and beneficiary as nominee for the lender.

Based upon these allegations, Plaintiff brings the following causes of action against both Defendants: (1) duty of care; (2) breach of fiduciary duty; (3) unjust enrichment; (4) undue influence; (5) fraud for profit; (6) misrepresentation; (7) tort; (8) breach of contract; (9) accounting for profit; (10) unfair business practice; (11) violation of Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.; (12) violation of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.; (13) violation of Federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.; (14) violation of Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; (15) violations of the California Financial Code §§ 4970 et seq.; (16) violation of the Home Equity Loan Consumer Protection Act; (17) violation of the Consumer Protection Act; (18) violation of California Civil Code § 1785.25; (19) violation of California Civil Code § 1785.26; (20) violation of the Rosenthal Fair Debt

Collection Practices Act; (21) violation of the Credit Services Act of 1984, California Civil Code §§ 1789.10 et seq.; (22) violation of the Fair Credit Billing Act; (23) breach of the covenant of good faith and fair dealing; (24) violation of California Civil Code § 1916.7; (25) violation of California Civil Code § 2923.5; (26) violation of California Civil Code § 2923.6; (27) violation of California Civil Code § 2966;[5] (28) failure to abide by FDIC statements of policy § 5000; and (29) quiet title.  Plaintiff's claims against EMC are dismissed for several reasons.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, legal conclusions couched as factual allegations are not accepted as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the

---

[5]Plaintiff mislabels this as claim number twenty-eight.

complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

## DISCUSSION

I. Arguments Relating to All Allegations and Claims for Relief

EMC argues that Plaintiff's complaint is vague because it fails to identify against which party each claim is alleged. EMC also contends that the complaint is not clear as to how EMC is liable because it fails to allege any actionable conduct taken by EMC, and, furthermore, EMC was not the lender on the loan nor the holder of any recorded interest in the real property.

Plaintiff contends that EMC's vagueness argument is a delaying tactic because EMC was able to understand the allegations sufficiently to file a motion to dismiss and EMC failed to meet and confer with Plaintiff before filing its motion. However, as discussed below, many of EMC's arguments are well-taken. Therefore, Plaintiff's argument that the motion is a delaying tactic fails. Furthermore, Plaintiff fails to provide authority that EMC must meet and confer with her before filing a motion to dismiss, nor is the Court aware of any such authority. Therefore, this argument is not well-taken.

Plaintiff must specify in her complaint EMC's conduct that is actionable. This is especially necessary because EMC is not the only named Defendant and many of Plaintiff's allegations appear to state claims against the entity or entities with whom Plaintiff originally negotiated her loans. All of Plaintiff's claims are dismissed on this ground with leave to amend to remedy this deficiency.

7

Plaintiff's claims are insufficient also because she fails to allege how EMC is related to her residential loans, the deeds of trust or the subject property. EMC indicates that it is the servicer of Plaintiff's loan. If Plaintiff is suing EMC in its role as loan servicer, she must state this in her complaint and only sue EMC for its conduct in that capacity. In her opposition, Plaintiff indicates that she believes EMC is the lender on her loan, but does not submit documentation that counters the documents submitted by EMC showing that it is not the lender. If Plaintiff is suing EMC as the lender, she must allege in her complaint the facts on which she bases this belief and then only state claims against EMC in it role as lender. Plaintiff also argues in her opposition that EMC is neither the lender nor the servicer of her loan, but is merely masquerading as such. If Plaintiff believes that EMC is an entity that is unrelated to her loans or real property and is taking her money without authority, she must allege in her amended complaint the facts on which she bases this belief. Also, Plaintiff should indicate what entity does have the authority to collect her loan payments.

For these reasons, all of Plaintiff's claims must be dismissed with leave to amend.

II. Arguments Related to Specific Causes of Action

Because Plaintiff alleges twenty-nine claims, many of which may not appropriately be brought against EMC in an amended complaint, the Court will briefly address several of EMC's arguments regarding specific claims. EMC correctly argues that there is no cause of action for "duty of care," Plaintiff's first cause of action, "undue influence," Plaintiff's fourth cause of

8

action, or "tort," Plaintiff's seventh cause of action. Plaintiff does not respond to this argument. Therefore, these claims are dismissed without leave to amend because amendment would be futile.

EMC argues that Plaintiff's claims for breach of contract, her eighth cause of action, and breach of the covenant of good faith and fair dealing, her twenty-third cause of action, must be dismissed for failure to allege a contract between Plaintiff and EMC. In her eighth cause of action, Plaintiff alleges, "Defendants and Plaintiff entered into contract to allow Plaintiff to make reduced payments for three months to qualify her for modification." Comp. ¶ 358. Thus, Plaintiff is attempting to allege the existence of a contract, but fails to do so because she does not allege that it is between herself and EMC. Therefore, these claims are dismissed with leave to amend. If Plaintiff chooses to amend these claims, she would be well-advised to attach a copy of the contract to her amended complaint.

EMC argues that causes of action eighteen and nineteen must be dismissed because, even if it "purposely and erroneously reported Plaintiff's timely payments as late payments to consumer credit reporting agencies," as alleged in ¶¶ 486 and 495 of the complaint, its communications would be privileged under California Civil Code § 47(c) which provides that publication is privileged under certain circumstances. Plaintiff does not respond to this argument. If Plaintiff chooses to amend causes of action eighteen and nineteen, she must also allege, if she truthfully can, facts that would indicate that these communications were not privileged under California Civil Code § 47(c).

EMC argues that Plaintiff's claims under Civil Code § 2923.5

9

1  and 2923.6 fail because these statutes do not provide for a private
2  cause of action.  Plaintiff does not respond to this argument.  If
3  Plaintiff chooses to amend this claim, she must include allegations
4  that these statutes provide for a private right of action.

5      EMC argues that certain claims can only be made against the
6  original lender.  Thus, even if EMC assumed the role of lender
7  through assignment, it would not be liable for violations of
8  several of the statutes cited by Plaintiff.  Plaintiff does not
9  respond to this argument.  Therefore, if she chooses to file an
10 amended complaint, she must specify how EMC is liable under the
11 statutes that are directed at original lenders.

12     EMC argues that Plaintiff's claims sounding in fraud must be
13 dismissed for failure to comply with the specificity requirement of
14 Rule 9 of the Federal Rules of Civil Procedure.  "In all averments
15 of fraud or mistake, the circumstances constituting fraud or
16 mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).
17 The allegations must be "specific enough to give defendants notice
18 of the particular misconduct which is alleged to constitute the
19 fraud charged so that they can defend against the charge and not
20 just deny that they have done anything wrong."  Semegen v. Weidner,
21 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place
22 and nature of the alleged fraudulent activities are sufficient,
23 Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.
24 1987), provided the plaintiff sets forth "what is false or
25 misleading about a statement, and why it is false."  In re GlenFed,
26 Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Scienter
27 may be averred generally, simply by saying that it existed.  See
28 id. at 1547.  Plaintiff's allegations of fraud fail to meet the

10

particularity requirement of Rule 9.  Therefore, these claims are dismissed with leave to amend.

III. Statute of Limitations

EMC argues that Plaintiff's claim for violation of the Truth in Lending Act is barred by the relevant statute of limitations. Plaintiff does not respond to this argument.  If Plaintiff chooses to amend this claim, she must include allegations that show it was filed within the applicable statute of limitations, and if not, she must include allegations to show that the doctrine of equitable tolling would be applicable.

IV. Remaining Causes of Action

EMC submits specific arguments for the dismissal of each of Plaintiff's causes of action.  Plaintiff does not address these specific arguments.  EMC's arguments are well-taken.  If Plaintiff files an amended complaint, she must respond to EMC's arguments regarding each cause of action she re-alleges.

V. Doe Defendants

The California Code of Civil Procedure allows plaintiffs to name fictitious defendants in a complaint if the plaintiff is ignorant of the defendants' true names.  See Cal. Code Civ. Pro. § 474.  Under California law, when the plaintiff discovers a defendant's identity, he or she may amend the complaint to substitute that defendant for one of the fictitious Doe defendants. The Federal Rules of Civil Procedure do not specifically provide for naming Doe defendants in the complaint.

The use of Doe Defendants is not favored in the Ninth Circuit. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wiltsie v. Cal. Dep't of Corrections, 406 F.2d 515, 518 (9th Cir. 1968).

11

If Plaintiff is unaware of the identity of additional defendants, she may attempt through discovery to identify the unknown defendants.  <u>Gillespie</u>, 629 F.2d at 642; <u>Velasquez v. Senko</u>, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986).  If she does, she may then file a motion for leave to amend to add claims against them.  At this time, the Court dismisses the Doe Defendants.

## CONCLUSION

For the foregoing reasons, all of Plaintiff's causes of action against EMC are dismissed.  Except for the three causes of action that are dismissed with prejudice, Plaintiff is granted leave to amend to remedy the deficiencies noted in this order and in EMC's motion, if she truthfully can do so.  She must not include any causes of action against GEM or Doe Defendants in the amended complaint nor may she add any cause of action that has not been alleged in her original complaint.  If Plaintiff chooses to file an amended complaint, she must do so within three weeks from the date of this order.  If Plaintiff does not file an amended complaint within this time period, the complaint will be dismissed for failure to prosecute.  The case management conference scheduled for September 29, 2009 is continued to December 10, 2009 at 2:00 pm. If Plaintiff files an amended complaint and EMC moves to dismiss it, it should notice its motion to be heard on December 10, 2009 at 2:00 pm.

IT IS SO ORDERED.

Dated: 9/30/09

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SUSAN P. VANDERBURGH,

    Plaintiff,

v.

GOLDEN EMPIRE MORTGAGE et al,

    Defendant.

Case Number: CV09-01361 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 30, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Susan P. Vanderburgh
3525 Del Mar Heights Road, #138
San Diego, CA 92130

Dated: September 30, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk